## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**VALPERSIA GAINERS-HASUGLUW, M.D.**

    **Plaintiff,**

**vs.**                                                    **Case No.:**

**ERIC K. SHINSEKI, SECRETARY,**
**DEPARTMENT OF VETERANS AFFAIRS,**

    **Defendant.**

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL
### INJUNCTIVE RELIEF REQUESTED

Plaintiff, Valpersia Gainers-Hasugluw, M.D. ("Gainers") complains of Defendant, Eric K. Shinseki, Secretary, Department Of Veterans Affairs ("Secretary"), as follows:

### JURISDICTION

1.    This court has jurisdiction of the claims in this complaint pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 28 U.S.C. § 1331.

2.    Plaintiff has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 as amended including having exhausted or being excused of any required administrative remedies.

### PARTIES

3.    Bay Pines VA Health Care System ("Bay Pines") is a Veterans Administration ("VA") hospital and medical center with related services. It is directed by a Medical Center Director, who presently and at all times relevant was Mr. Wallace Hopkins ("Hopkins"). Bay Pines is broken down into various services, including the Medicine, Surgical, Geriatrics and

Extended Care, Primary Care, and Mental Health Services. Presently and at all relevant times, Dr. George Van Buskirk ("Van Buskirk") was the Chief of Staff with line authority over the several medical services within the hospital. The chief of the Medicine Service is presently and at all relevant times was Dr. Lithium Lin ("Lin"). The Medicine Service is broken down into various sections including nephrology, pulmonary, cardiology, neurology and hospitalists. The Chief of the hospitalists section is currently and at all relevant times was Dr. Sharadchandra Patel ("Patel").

4.      Each of the employees of the VA or Bay Pines described herein was employed by the Defendant or Bay Pines and was acting within the course and scope of his or her employment with the Defendant or Bay Pines at the time of the conduct described herein.

5.      Gainers, a resident of Largo, Florida, is a Board Certified internal medicine physician. She has been employed as a hospitalist at Bay Pines from September, 2004 to the present. At all relevant times, Gainers' first-line supervisor was Patel whose supervisor was Lin. Gainers is a female African-American. Gainers has been a soldier in the U.S. Army since 1990 and is currently a Flight Surgeon for the Medical Detachment located in St. Augustine, Florida. Her rank is LTC. Colonel. She is a Flight/Field surgeon and the Chief Narcotics Officer with the Florida Medical Detachment. She was formerly the Chief Aviation Officer for the Florida Medical Detachment. She has served 2 tours in Iraq and 1 tour in Germany since 2004. She has engaged in annual training missions.

## GENERAL ALLEGATIONS

### A.    Pattern, Practice and Culture of Retaliation

6.      The Defendant has engaged in a pattern and practice of retaliation and hostile retaliatory work environment and has maintained a culture of retaliation and hostile retaliatory

work environment and has allowed a culture of retaliation and hostile retaliatory environment to be maintained with respect to Equal Employment Opportunity ("EEO") activity, including making EEO complaints, participating as a witness on behalf of other parties' EEO complaints and objecting to or opposing discriminatory and retaliatory conduct.

7.     For many years various high-ranking administrators, managers and supervisors at Bay Pines, including Hopkins, Van Buskirk, Lin and Patel, have punished employees or permitted or overlooked the hostile treatment of employees who made EEO complaints or who objected to or opposed discrimination or retaliation.  Such administrators have attempted to deter the making of EEO complaints by retaliating against or overlooking retaliation against employees who have made EEO complaints or have opposed discrimination or retaliation.  For example, Van Buskirk, the Chief of Staff, Lin, the Chief of the Medicine Service, and Patel, the Chief of the hospitalist section, with the knowledge, assistance and support of Hopkins, decided to and attempted to deter the filing of employment complaints by retaliating against those who engaged in EEO activity.  To this end Lin, Van Buskirk and Patel, with the actual or tacit support of Hopkins, undertook a course of retaliation against numerous Bay Pines employees for engaging in EEO and other protected activity, including, *inter alia*, Gainers, Dr. Diane Gowski, Dr. Claudia Cote, Dr. Sally Zachariah, Dr. Ramon Lopez, Dr. Jacques Durr, Dr. Robert Mandelkorn, Ms. Sabrina Patrick, Ms. Roxanne Lainhart Bronner, Dr. Selim Elzayat, Ms. Pamela Trimle, Dr. Michel Vandermael and Dr. David Johnson.  Such retaliation included, by way of example, various acts to harm an employee's reputation and career; various types of discipline and proposed discipline, including termination, suspension, reprimand and counseling; denying leadership positions; changing duties and office assignments; seeking information to discipline and terminate employees; seeking out employees to assist in gathering derogatory

information about employees, including the solicitation of Reports of Contact, which are written complaints by one employee against another and are used as a basis for steps in discipline; spying on employees; using unjust criticism and criteria and withholding awards until an employee agrees to provide information derogatory of other employees; rifling through employees' files and documents; creating and maintaining false records about employees; removing employees from committees; reducing or limiting physician's medical privileges and credentialing; subjecting physicians to inappropriate fitness-for-duty exams; failing to follow required procedural requirements for adverse or disciplinary actions; subjecting employees to lower evaluations, inappropriate pay and bonuses and increasingly higher levels of discipline up to suspension without pay and termination; and using committees to insulate the administrators from appearing to have engaged in discriminatory or retaliatory conduct.

8.     As part of the pattern, practice and culture of retaliation and hostile retaliatory work environment, various administrators, managers and supervisors at Bay Pines, including Hopkins, Van Buskirk, Lin and Patel, have developed and maintained a reputation for retaliation against those who engage in EEO activity or do not join in their efforts to insulate their management style including their willingness to retaliate.

9.     As a result of the pattern, practice and culture of retaliation and hostile retaliatory work environment, a fear of retaliation has developed at Bay Pines. As a result, a number of very good employees are afraid to come forward with information they have concerning discriminatory or retaliatory conduct and a number of very good employees have chosen to leave Bay Pines.

10.     As part of the pattern, practice and culture of retaliation and hostile retaliatory work environment, concerns about retaliation are ignored and not investigated.

A.     By way of example, an affidavit by Roxanne Lainhart Bronner ("Bronner"), who was previously the Administrative Officer for Lin, was provided to various administrators at Bay Pines including Hopkins. In that affidavit, Bronner pointed out the existence of a scheme, of which she had firsthand knowledge, to retaliate against physicians for EEO activity in order to punish physicians for engaging in EEO activity and to deter future EEO activity by punishing, terminating and destroying the reputations and careers of such physicians. The affidavit further pointed out that Hopkins' conduct assisted that scheme and that both he and Van Buskirk protected Lin. Despite the affidavit, the Bay Pines Administration did nothing to investigate the allegations in Bronner's affidavit.

B.     By way of further example, in August, 2007, a Bay Pines employee, Sabrina Patrick ("Patrick"), advised the chief of staff (Van Buskirk) and Associate Director Kaye Green ("Green"), by email that she had filed an EEO complaint against Lin and his then acting Administrative Officer and that the acting Administrative Officer told her in the context of filing the EEO complaint that she (Patrick) would go nowhere at Bay Pines and that:

> "If I [the acting Administrative Officer] were you, I wouldn't file an EEO complaint.  Trust me you don't want to file.  If you file an EEO complaint, you're only going to make it harder for yourself.  I am protected by Dr. Lin and Dr. Van Buskirk; they told me they will protect me."

Patrick also advised Green and Van Buskirk that Lin's acting Administrative Officer also threatened a co-worker about an EEO complaint and mentioned to the co-worker that an employee at the Gainesville VA had applied for a job at Bay Pines, but when Green found out she had filed an EEO complaint at the Gainesville VA, Green would not give him the job at Bay Pines.  After Ms. Patrick provided this information by email to Green

and Van Buskirk, neither Hopkins, Green, Van Buskirk, nor anyone else at Bay Pines undertook to investigate the matter although such an investigation was required by VA and Bay Pines rules and regulations.

     C.     By way of further example, Darin Oakes ("Oakes"), a Bay Pines Police Officer, reported to an Assistant Director at Bay Pines, Kristine Brown ("Brown"), that the Chief of the Police Service, Robert Shogren ("Shogren"), was referring to him in a racially offensive manner and that Shogren was treating him differently since he (Oakes) objected to it. In addition to laughing at Oakes' complaint, Brown, on information and belief, did not investigate and did not have the matter investigated although she said it was serious and would be looked into.

Such conduct, omissions and failure to investigate reflect a continuing disregard of the laws and rules concerning retaliation, serve to intimidate, cause fear that retaliation will not be addressed and will be tolerated at Bay Pines, and maintain the culture of retaliation and a hostile retaliatory work environment.

     11.     In July, 2009, following a jury trial in the U.S. District Court for the Middle District of Florida (*Fiedler, et. al. v. Eric Shinseki, Secretary, Department of Veterans Affairs*; case number 8:07-cv-1524), a jury found that Bay Pines had retaliated against three doctors and an administrative officer for EEO activity and awarded damages to the plaintiffs. The complaint alleged, and the case was presented and argued as involving a systemic scheme at Bay Pines perpetrated by Hopkins, Van Buskirk, Lin and Patel to retaliate against employees who engaged in EEO activity in order to punish those employees and to deter others from engaging in EEO activity. On November 23, 2009 the federal court in that case entered an order declaring that "there is no showing permitting a conclusion that the discriminatory conduct will not recur or

that the circumstances have changed such that the effects of the retaliatory hostile work environment [at Bay Pines] have been eliminated" and that "[i]ndeed, it appears that no changes have been made at all at Bay Pines VA in response to the verdict in this case." The court's order also granted injunctive and equitable relief including enjoining Bay Pines from "continuing or maintaining any policy, custom, usage or practice of retaliation, retaliatory harassment, or retaliatory hostile work environment" at Bay Pines and ordered "remedial instruction on work place discrimination, with particular focus on retaliation and retaliatory harassment in the work place, and hostile work environment for, *inter alia*, Hopkins, Van Buskirk, Lin and Patel.

12.    Despite the foregoing verdict and November 23, 2009 federal court order, Bay Pines or the VA has engaged in the following conduct and omissions since the verdict:

A.    38 U.S.C. §516 provides, *inter alia*, that the Secretary impose disciplinary measures against VA employees who engage in unlawful employment discrimination, including retaliation against an individual asserting rights under an equal employment law.  VHA rules, including Directive 2009-057, require the VA to take corrective action and appropriate disciplinary action immediately where there has been a finding of retaliation or reprisal.  Despite the finding of retaliation or reprisal in a federal court, no corrective action or disciplinary action against Hopkins, Van Buskirk, Lin or Patel has been taken.

B.    38 U.S.C. §516 provides that not later than 45 days after the end of each calendar quarter, the Assistant Secretary for Human Resources and Administration shall submit to the Committees on Veterans' Affairs of the Senate and House of Representatives a report summarizing the employment discrimination complaints filed against various individuals, including the director and the director and the chief of staff

for each medical center of the VA. On information and belief, it is believed that such reports have not included any of the complaints against the director and chief of staff of Bay Pines.

C.     At a Director's General Staff meeting at Bay Pines on January 7, 2010, the Bay Pines EEO manager stated during her EEO update words to the effect that the people at the meeting should not believe everything they read in the newspapers about the aforesaid case and that Bay Pines does not tolerate retaliation or reprisal against any employee who files a discrimination complaint. The Bay Pines EEO manager then commended Hopkins for his purportedly great leadership skills and presented him with an apparent EEO-related award.   The reference to the newspapers was a reference to reports in the St. Petersburg Times concerning the jury's verdict and the court's November 23, 2009 order in the aforementioned case.

D.     Hopkins told a group of employees at a "Directors meeting" that the aforesaid trial and verdict should be referred to as "the event." The reference to "the event" was to the fact that the term "the event" is used in Haiti to describe the hurricane there as a way of disassociating the speaker from the horror of the hurricane's destruction. Hopkins' mocking or joking use of the term to describe the trial and verdict was an attempt, *inter alia*, to trivialize and make light of the verdict and claims of retaliation at Bay Pines.

E.     In June, 2010, in the context of waiting in a witness room to testify in an EEO case filed by a Bay Pines police officer, Hopkins angrily told Shogren and one or more assistant chiefs that he did not care how many police officers Shogren fired. This intimidating statement has been disseminated among employees at Bay Pines.

F.     In early August, 2010, a police officer, Thomas Jacquis ("Jacquis"), who had been terminated, complained to John Bond ("Bond"), an employee and labor relations specialist at the Bay Pines Human Relations Department, about the conduct and lack of truthfulness of the police chief.  After the police office implied to Bond that he (Jacquis) had been retaliated against, Bond told the police officer that he should stop drinking the "Magri Kool-Aid" and believing the St. Petersburg paper.  The reference to the "Magri Kool-Aid" was a sarcastic and trivializing reference to the results of the verdict and November 23, 2009 court order in the aforementioned case.  The reference to the St. Petersburg paper was a reference to the aforementioned St. Petersburg Times articles.

Such conduct and omissions, especially following the verdict and order in a federal court, reflect a continuing disregard of the laws and rules concerning retaliation, serve to intimidate, cause fear of retaliation, cause fear that retaliation will not be addressed and will be tolerated at Bay Pines, and maintain and further the culture of retaliation and retaliatory hostile work environment.

13. Hopkins publicly stated that he felt there were a lot of EEO's at Bay Pines and he wanted to stop them and therefore was not going to settle any.  In addition, at a meeting in or about April or May, 2009, Hopkins told Police Service managers and supervisors not to worry about employee claims because he would always support managers, not employees.  In addition to constituting direct evidence of retaliation, such comments by administrators and by managers are themselves intimidating, cause fear of retaliation, create a hostile retaliatory work environment, and maintain the culture of retaliation and retaliatory hostile work environment.

14.     Lin dislikes, disrespects and will discriminate against women, blacks and people

of different sexual orientation.  He has a stereotypical bias relating to gender roles.  Lin has described several "blacks as lazy and lacking in discipline."  He has accused Bronner, when she was the Administrative Officer for the Medicine Service, of not disciplining black employees he disliked "because they were black and you [Bronner] are afraid of people of color."  In fact, those employees were performing satisfactorily when he made these statements.

15.     No black physicians and few female physicians (perhaps one) have been made a section chief since Lin became Chief of Medicine.

16.     As part of efforts to retaliate, Van Buskirk and others have shown contempt for and have ignored the legal process.  As part of an open, expressed hostility to the legal process, they have described efforts by employees to redress legal wrongs as efforts to let lawyers run the medical center.

17.     At the relevant times, Van Buskirk, Lin and Patel were aware of relevant EEO activity by Gainers when they took the adverse actions against Gainers.

18.     Gainers had observed Patel's treatment of certain other blacks or African Americans, which treatment she believed reflected discrimination.  She was also aware that Patel and Lin had forced out the prior chief hospitalist who was a black female.

19.     Jocelyne David was the chief hospitalist when Gainers was hired.  David is a black female.  Patel told her he did not like working for a female boss.  He treated her with hostility and was often rude and undercut her authority.  She complained to Lin who supported Patel.  On December 24, 2004 David wrote a memorandum to Lin and Van Buskirk informing them, *inter alia*, of certain conduct by Dr. Patel, including his engaging in sexual harassment. No investigation was conducted. At one point, Lin told David to keep a low profile.  Eventually, David left Bay Pines and took a hospitalist position at the Miami VA hospital.  She kept her

home in St. Petersburg where her family lived.  She had not wanted to leave Bay Pines but felt she could no longer work in that environment.  Eventually she became the Chief Hospitalist at the Miami VA.

20.     Gainers is a high ranking female officer having moved up the ranks in the military.  She is well respected there, as well as a hard working hospitalist respected by her peers.  Therefore Patel's treatment of her was especially damaging.

21.     When Patel and Lin began to treat her differently than white males were being treated in relation to her military duties, she attempted to have it addressed by involving others.  Because she believed discrimination was involved, she sought to involve a higher official, EEO Manager Harris at Bay Pines.

22.     Gainers learned of various adverse and retaliatory actions taken against other Bay Pines employees, which increased the intimidation, fear of retaliation and hostile retaliatory work environment, but attempted to address her concerns in accordance with the rules.

23.     In February, 2008, Gainers went to the EEO manager and made a complaint of EEO discrimination.  While there she noticed that Patel had followed and spied on her when she went to the EEO Manager.  Subsequently, mediation occurred between Harris, Patel, Lin and Gainers.  However, no resolution was achieved.  Patel and Lin began to more aggressively and improperly interfere with her military duties.

24.     In or about February, 2008, Patel improperly threatened to call Gainers' military commander to try to get her drill dates changed.

25.     Gainers always gave advance notice of her military duty.   On numerous occasions, Patel improperly told her that it did not matter if she submitted the document request in advance because the medical officer of the day ("MOD") duty takes precedence over her

military obligations.  On one occasion, Patel stated, "I'm not stupid, I know what the 'F' military is about."  In addition, to directly violating rules on medical leave by telling her that he would have to find her own substitutes for extra duty shifts as MOD, Patel insisted that Gainers change her active duty schedule, instead of changing her MOD schedule.  Patel knowingly and improperly scheduled Gainers to work on the dates on which he knew that she was scheduled for military duty, including on March 15 and May 15, 2008.  Patel refused to acknowledge Gainers' military duty and improperly placed on her responsibility to find a substitute.  Lin was informed of these matters by Gainers, but he supported Patel.  White male physicians at Bay Pines did not have the same difficulty getting permission to go on military duty, nor were they given schedules that conflicts with their military duty.

26.     On or about April 29, 2008, Patel called Gainers to an unscheduled meeting to discuss her performance.  At that meeting, Patel rudely voiced his dissatisfaction with her military status and rudely asked her to give the leave document to her military commander.  Patel also provided her with a copy of VA Memorandum 51606 that was highlighted in yellow with reference to military leave in an effort to inform her that he was not acknowledging the requirements of the VA set forth for military personnel.

27.     At the meeting on April 29, 2008, Patel also improperly told Gainers that it was her responsibility to find a substitute for the dates she was scheduled for military duty if those dates conflicted with her work schedule.

28.     At the meeting on April 29, 2008, Patel angrily made reference to Gainers' proficiency report in which Patel made improper, unfair and derogatory comments about Gainers which were approved by Lin.  Patel's comments included false and derogatory comments that a review of records revealed that Gainers' care was unfocused and non-goal oriented; that Gainers

did not know the difference between a live and dead patient; that her discharge summaries were jumbles of thought displaying lack of continuity and progression of thought regarding the patient's hospital course of treatment; that there was an egregious misunderstanding of patient records as a result of cutting and pasting of unnecessary data to the extent that it was difficult to determine what transpired during the patient's hospitalization.  Prior to this evaluation she had not received counseling and there had been no concerns raised about her clinical work. Nevertheless, Patel placed his derogatory comments in her permanent file.

29.     When Gainers complained to Lin he falsely stated "you are one of the weakest . . . I suggest you read articles."  Lin signed the proficiency report.

30.     At the meeting on April 29, 2008, Patel warned Gainers that due to her EEO complaint she would never receive a rating above satisfactory and that he would not recommend her for a salary increase.

31.     At the meeting on April 29, 2008, Patel did not allow Gainers to have union representation during the meeting although he was required to because he addressed her military obligations and gave her a copy of agency procedures regarding military leave.

32.     Sometime after the April 29, 2008 meeting, Patel caused a clerk to ask Gainers to sign a new proficiency form because the dates that were typed in on the proficiency rating she signed on April 29, 2008 were incorrect.  He blamed a black female for the mistake.

33.     Following her return from active military duty in 2005, Gainers informed management, including Lin, of her desire to participate on the OIE/OIF military committee. Participation on a committee would assist her in meeting her performance measures and it would affect her pay.  Despite her announced desire to participate on a committee, she was not assigned to any committees.   On or about April 29, 2008, Gainers advised Patel of her concern about her

lack of committee assignment and reiterated her desire to be placed on a committee. However, Patel never assigned her to any committees. Subsequently, Gainers was able to get herself on the discharge committee by approaching the committee chairmen. She was later placed on the PHA committee.

34.     On or about May 28, 2008, Gainers discovered she was one of the lowest paid hospitalists including others who came on board when she did, although she performed the same duties as her colleagues.

35.     Gainers made an informal EEO complaint with ORM on or about May 28, 2008. Gainers filed a formal EEO complaint (Case No. 200I-0516-2008103172) on August 12, 2008.

36.     On March 11, 2009, Gainers was notified that several of her clinical "core" privileges had been denied on the recommendation of Lin and Patel and with the support of Van Buskirk. Gainers was the only hospitalist to have her "core" privileges denied. This not only adversely affected her employment and career at Bay Pines, it could adversely affect her military career and duties as a flight surgeon. When she brought these matters to the attention of Patel, Lin, Van Buskirk and Hopkins, they refused to change any of their actions.

37.     On March 17, 2009, Gainers was listed as a witness in Cote et al. Case No. 8:07-cv-1524.

38.     Patel has persisted in efforts to undermine her reputation with others. Gainers remains one of the lowest paid hospitalists.

## COUNT I
### (Retaliation)

39.     Plaintiff, Valpersia Gainers-Hasugluw, M.D., sues Eric K. Shinseki, as the Secretary of Veterans Affairs, for retaliation under Title VII.

40.     Plaintiff incorporates and realleges paragraphs 1 through 37.

14

41.     Plaintiff engaged in EEO activity which is protected under Title VII.

42.     The Defendant was aware of each of the Plaintiff's protected or EEO activities under Title VII.

43.     The aforesaid adverse employment actions; other adverse actions; misconduct; and other conduct, acts and omissions to the Plaintiff's detriment; as well as other adverse employment actions and conduct, were all taken (or failed to be taken) by administrators and managing and supervisory personnel at Bay Pines in retaliation for the protected or EEO activity of the Plaintiff including those set forth above.

44.     As a direct and proximate result of the protected or EEO activity, Plaintiff has suffered the adverse employment actions and other adverse actions, including these set forth above.

45.     Bay Pines has intentionally maintained these retaliatory and unlawful practices to the detriment of its employees.

46.     The Defendant at all relevant times knew or should have known of the retaliatory actions being taken against the Plaintiff.

47.     The Defendant failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

48.     The Defendant, through the supervisors of the Plaintiff, including Hopkins, Van Buskirk, Lin, Patel and others, has engaged in, directed, and/or ratified retaliatory conduct and has frustrated the Plaintiff's efforts to obtain relief under Title VII.

49.     The Defendant, through acceptance of such conduct, has fostered an attitude among administrators, managers and supervisors in Bay Pines that retaliation against employees in order to discourage protected EEO activity is an acceptable employment practice by

administrators, managers and supervisors at Bay Pines.

50.     Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

51.     As a result of the foregoing, Plaintiff has been damaged.  Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional suffering and distress.  Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

52.     Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT II
### (Retaliatory Hostile Work Environment)

53.     Plaintiff, Valpersia Gainers-Hasugluw, M.D., sues Eric K. Shinseki, as the Secretary of Veterans Affairs, for retaliatory hostile work environment.

54.     Plaintiff incorporates and realleges paragraphs 1 through 37.

55.     The aforesaid actions and conduct have created an intolerable hostile work environment.

56.     As a result of the foregoing, Plaintiff has been damaged.  Such damages include, but are not limited to payment of attorneys' fees and legal costs, loss of an amicable work environment, humiliation, anxiety, degradation, embarrassment, physical injury or illness, and severe emotional suffering and distress.  Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

57.     Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT III
## (Injunctive Relief)

58.     Plaintiff, Valpersia Gainers-Hasugluw, M.D., sues Defendant Eric K. Shinseki, as Secretary of the Department of Veterans Affairs.

59.     Plaintiff incorporates and realleges paragraphs 1 through 37.

60.     Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

61.     There is: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless an injunction issues; (3) the threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, is issued, will not disserve the public interest.

62.     Plaintiff requests the Court award her attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

a.      Violating Title VII or the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et*

*seq.*, as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on gender and race.

    b.    Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demands trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

## COUNT IV
### (Race Discrimination)

63.    Plaintiff, Valpersia Gainers-Hasugluw, M.D., sues Eric K. Shinseki, as Secretary of the Department of Veterans Affairs for racial discrimination under Title VII.

64.    Plaintiff incorporates and realleges paragraphs 1 through 37.

65.    As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant because of race (African American).

66.    The above discriminatory actions were taken by the supervisory personnel within the VA in order to deprive Gainers of employment and other employment action because of her race.

67.    The Defendant has intentionally maintained these discriminatory and unlawful practices to the detriment of the Plaintiff.

68.    The above-referenced actions have created an intolerable hostile work environment.

69.    The Defendant at all relevant times knew, or should have known, of the above-referenced discrimination against the Plaintiff.

70.    The Defendant has failed to take necessary action to prevent or correct the

complaint of discrimination and, in fact, ratified such conduct.

71.     The Defendant, through the Plaintiff's managers and supervisors has engaged in, directed or ratified conduct and denied and frustrated the Plaintiff's efforts to obtain relief under Title VII.

72.     The Defendant, through acceptance of the complained of conduct, has fostered an attitude among supervisors at Bay Pines that racial discrimination is acceptable employment practice.

73.     Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Gainers has been and continues to be denied her rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

74.     As a result of the foregoing, Gainers has been damaged. Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to professional reputation; and humiliation, degradation, embarrassment, and severe emotional suffering and distress. Gainers will continue in the future to suffer these damages absent relief from this Court.

75.     Plaintiff has satisfied all conditions precedent to filing of this suit or she has been prevented by the Defendant from satisfying such conditions precedent, or she is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT V
## (Gender Discrimination)

76.    Plaintiff, Valpersia Gainers-Hasugluw, M.D., sues Eric K. Shinseki, the Secretary of Department of Veterans Affairs for gender discrimination under Title VII.

77.    Plaintiff incorporates and realleges paragraphs 1 through 37.

78.    As a direct and proximate result of the aforesaid conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant because of gender (female).

79.    All of the above discriminatory actions were taken by the supervisory personnel within the Department of Veterans Affairs in order to deprive the Plaintiff of employment and other employment action because of her gender.

80.    The Defendant has intentionally maintained these discriminatory and unlawful practices to the detriment of its employees.

81.    The above-referenced actions have created an intolerable hostile work environment.

82.    The Defendant at all relevant times knew, or should have known, of the above-referenced discrimination against the Plaintiff.

83.    The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact, ratified such conduct.

84.    The Defendant, through the Plaintiff's managers and supervisors, has engaged in, directed or ratified conduct and denied and frustrated the Plaintiff's efforts to obtain relief under Title VII.

85.    The Defendant, through acceptance of the complained of conduct, has fostered an attitude among managers and supervisors at Bay Pines that gender discrimination is acceptable

employment practice.

86.     Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied her rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq,*

87.     As a result of the foregoing, Plaintiff has been damaged.  Such damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable work environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional suffering and distress.  Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

88.     Plaintiff has satisfied all conditions precedent to filing of this suit or she has been prevented by the Defendant from satisfying such conditions precedent or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff, Valpersia Gainers-Hasugluw, M.D., hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Joseph D. Magri
Florida Bar No. 0814490

21

Merkle Magri & Meythaler, P.A.
5415 Mariner St., Suite 103
Tampa, FL 33609
Tel. (813) 281-9000
Fax.: (813) 281-2223
Email: jmagri@merklemagri.com